Filed 9/16/20  P. v. Green CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B298835 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA235363) |
| v. | |
| MICHAEL RAY GREEN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Rufo Espinoza, Jr., Judge.  Affirmed.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Susan Sullivan Pithey, Assistant Attorneys General, Kristen J. Inberg and Nathan Guttman, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Michael Ray Green (defendant) appeals from the summary denial of his petition for resentencing pursuant to Penal Code section 1170.95.[1] Defendant contends that the trial court failed to follow the mandated procedures. He also contends that because the court did not expressly find a procedural defect in the petition, the court erred in finding him ineligible for relief under the statute and in failing to appoint counsel as requested in the petition. We find no merit to defendant's claims and as defendant has failed to demonstrate prejudicial error, we affirm the trial court's order.

## BACKGROUND[2]

**Defendant's 2003 murder conviction**

A jury convicted defendant of first degree murder and found that a principal intentionally and personally used and discharged a firearm, causing death. (See §§ 187, subd. (a), 12022.53, subds. (b), (c), (d), (e)(1).) The jury further found that the offense was committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (b)(1). Since the trial court found that defendant had suffered a prior serious or violent felony conviction with the meaning of the Three Strikes Law (§§ 1170.12, subds. (a)-(d, 667, subds. (b)-(i)),

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated. All references to subdivisions without reference to a code section are to subdivisions of section 1170.95.

[2] Like the parties, we take our summary from the appellate decision affirming defendant's 2003 judgment. (See *People v. Green* (June 1, 2004, B168254 [nonpub. opn.].)

defendant was sentenced to a term of 75 years to life in prison. The appellate court opinion summarized the relevant facts in evidence at trial as follows:

At approximately 7:00 p.m. on June 12, 2002, two men, one armed with a handgun, entered the courtyard of the apartment complex on South Broadway in Los Angeles in which defendant, an admitted member of the 69 East Coast Crips gang, lived and sold drugs. The men asked someone in the courtyard to get defendant. As defendant walked down the stairs, the man with the gun asked, "Is that him?" Defendant said, "It's that fool," pointing at Michael Millage, who was in the courtyard selling drugs. The man with the gun fired three or four shots at Millage. Millage died as a result of three gunshot wounds.

Earlier that day, defendant had been informed by one of his roommates that a member of the Bloods gang was in the apartment complex. Defendant made a telephone call and then told his girlfriend, Joyce Harris, to go to the East Coast Crips hangout and tell his fellow gang members that a member of the Bloods was at his apartment complex. At the hangout, Harris saw several members of the Crips gang get into two vehicles. Two of the men had guns they had obtained from defendant's brother's car. As Harris returned to the South Broadway apartment, she saw four or five of the gang members getting out of a car, and she witnessed the shooting of Millage. Defendant later told her that he had "masterminded a murder."

A Los Angeles police detective testifying as a gang expert stated that he believed the murder was committed for the benefit of the Crips gang. The victim was believed by defendant to be a member of a rival Blood gang and was selling drugs in an area considered Crips territory in which defendant sold drugs.

In defense, a friend of defendant's testified that defendant was with her at her residence across the street from where Millage was killed when they heard the shots that killed Millage.

**Senate Bill No. 1437**

In 2018, the Legislature passed Senate Bill No. 1437 (S.B. 1437) in order to "revise the felony murder rule to prohibit a participant in the commission or attempted commission of a felony that has been determined as inherently dangerous to human life to be imputed to have acted with implied malice, unless he or she personally committed the homicidal act." (Senate Rules Com., Off. Of Senate Floor Analysis, Rep. on Sen. Bill No. 1437 (2017-2018 Reg. Sess.), as amended Aug. 20, 2018, p. 6.) S.B. 1437 amended sections 188 and 189, effective January 1, 2019. As amended, section 188 limits a finding of malice as follows: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Subdivision (e) of section 189 now requires that for a participant in the perpetration of a felony listed in section 189, subdivision (a) in which a death occurs, to be liable for murder, one of the following must be proven:

"(1) The person was the actual killer.

"(2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.

"(3) The person was a major participant in the underlying felony and acted with reckless

4

indifference to human life, as described in subdivision (d) of Section 190.2."

**Pleading requirements**

Section 1170.95 was added by S.B. 1437 to provide a procedure by which those convicted of murder can seek retroactive relief if the changes in sections 188 or 189 would affect their previously affirmed convictions. (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722.) A petition under section 1170.95 must include the following:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.
>
> "(2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.
>
> "(3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019."

In addition, the petition must include the petitioner's declaration showing eligibility for relief under this section, the superior court case number and year of conviction, and any requests for the appointment of counsel. (§ 1170.95, subd. (b)(1).)

**Defendant's section 1170.95 petition**

In January 2019, defendant filed a petition for resentencing under the amended statutes. His preprinted petition consisted of

boxes to be checked next to applicable allegations. Defendant checked two boxes which allege the following:

"1. A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.

"2a. At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine."

The only other boxes checked on the form were No. 4, requesting appointment of counsel and No. 8, the proof of service allegation.

On March 29, 2019, the trial court issued a memorandum decision summarily denying the petition, without appointing counsel. After reviewing the petition and the court's file, including jury instructions, the court found that the jury was not instructed on either the felony murder rule or the natural and probable consequences theory, and that the prosecution had instead relied upon the theory that defendant was a direct aider and abettor. The court concluded that defendant was thus ineligible for resentencing.

Defendant filed a timely notice of appeal from the trial court's order.

## DISCUSSION

Defendant contends that the trial court erred in reviewing the court file to find him ineligible for relief under section 1170.95.

Missing from defendant's petition was the section 1170.95, subdivision (b)(1)(A) requirement that the petition include "[a] declaration by the petitioner that he or she is eligible for relief

6

under this section, based on all the requirements of subdivision (a)." Subdivision (a)(3) requires an allegation that "[t]he petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." Defendant's petition failed to include this allegation. In addition, the boxes on the form petition alleging that defendant could not be convicted of first or second degree murder under the amended statutes, were left blank. Thus, the petition is inadequate.

Defendant suggests that because the court did not *expressly* find any defect in the petition, the court was required to immediately appoint counsel and proceed as though the petition was not deficient on its face. We have found no language in the statute requiring express findings, or a presumption of sufficiency when a petition is clearly lacking.

The trial court's initial determination of the facial sufficiency of the petition is governed by section 1170.95, subdivision (b)(2). (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, review granted Mar. 18, 2020, S260493 (*Verdugo*).) Subdivision (b)(2) states: "If any of the information required by [subdivision (b)] is missing from the petition and cannot be *readily ascertained by the court*, the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information." (Italics added.) Thus, as there were required allegations which were missing from defendant's petition, subdivision (b)(2) permitted the court either to deny the petition without prejudice or look to readily ascertainable information to make an initial determination of the sufficiency of the petition. Readily ascertainable information may be in court

7

file's record of conviction, such as the "complaint, information or indictment filed against the petitioner; the verdict form or factual basis documentation for a negotiated plea; and the abstract of judgment." (*Verdugo*, at pp. 329-330.) The record of conviction may also include jury instructions and any appellate opinion in the case. (See *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1138-1139, review granted Mar. 18, 2020, S260598 (*Lewis*).) Here, the trial court's review of the jury instructions to find the information missing from defendant's petition was tantamount to an express ruling that the petition was in fact deficient on its face.

Even if the trial court had determined in its initial review that defendant's petition was sufficient, it would not have been required to immediately appoint counsel. Once the initial review shows that the petition is facially sufficient, the court proceeds to section 1170.95, subdivision (c) to determine whether the petitioner has made a prima facie showing of eligibility for relief. Section 1170.95, subdivision (c) "requires the trial court to make two assessments. The first is whether the petitioner has made a prima facie showing of *eligibility for* relief." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 975.) "In [the] second step, the trial [court] considers whether the petitioner has made a prima facie showing of *entitlement to* (rather than eligibility for) relief." (*Id.* at p. 976; see *Verdugo, supra*, 44 Cal.App.5th at p. 330.) The first assessment is described in subdivision (c) as follows: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. . . ." The right to counsel does not attach until the petitioner makes this the first-stage prima facie showing of eligibility under the statute. (*Lewis, supra*, 43 Cal.App.5th at pp. 1139-1140; cf. *Verdugo*, at p. 328.)

At the first, or eligibility prima facie stage, the trial court may look to the record of conviction, and may summarily deny the petition when the record "show[s] as a matter of law that the petitioner is not eligible for relief." (*Lewis, supra*, 43 Cal.App.5th at p. 1138; see also *Verdugo,* at p. 330; *People v. Cornelius* (2020) 44 Cal.App.5th 54, 57-58, review granted Mar. 18, 2020, S260410 (*Cornelius*).) Thus, even facially sufficient allegations may be refuted as a matter of law. Defendant disagrees, and making a comparison to habeas corpus procedure, he argues that the court must look only to the face of the petition to determine whether a prima facie showing of eligibility has been made, and if so, the court must appoint counsel. However, such a comparison is not helpful. A habeas petition alleging only "pro forma allegations" is inadequate. (*In re Reno* (2012) 55 Cal.4th 428, 488.) "'Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing.' [Citation.]" (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) In determining whether a habeas petition has made a prima facie showing of entitlement to relief, the court takes petitioner's factual allegations as true (Cal. Rules of Court, rule 4.551(c)(1)); however, the court is not required to assume the allegations are true if they are directly contradicted by the court's own records. (*In re Serrano* (1995) 10 Cal.4th 447, 456.)

Here, defendant's petition was not facially adequate. Defendant failed to check even those boxes that would have provided conclusory explanations for his claim of eligibility. "'It would be a gross misuse of judicial resources to require the issuance of an order to show cause or even appointment of counsel based solely on the allegations of the petition, which frequently are erroneous, when even a cursory review of the court

file would show as a matter of law that the petitioner is not eligible for relief.  For example, if the petition contains sufficient summary allegations that would entitle the petitioner to relief, but a review of the court file shows the petitioner was convicted of murder without instruction or argument based on the felony murder rule or [the natural and probable consequences doctrine], . . . it would be entirely appropriate to summarily deny the petition based on petitioner's failure to establish even a prima facie basis of eligibility for resentencing.' [Citation.]" (*Lewis, supra*, 43 Cal.App.5th at p. 1138, quoting Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2019) 23:51(H)(1), pp. 23-150 to 23-151.)

We conclude that the trial court correctly reviewed its file regarding defendant's murder conviction to find, as a matter of law, that the prosecution did not proceed against defendant under the felony murder rule or the natural and probable consequences doctrine.  As defendant's petition did not establish a prima facie showing of eligibility, the court was not required to proceed to the second stage assessment of section 1170.95, subdivision (c) to determine whether defendant had made a prima facie showing of entitlement to relief under the statute.

The trial court's order is presumed correct and it is defendant's burden as the appellant to demonstrate error. (*People v. Garza* (2005) 35 Cal.4th 866, 881.)  Moreover, it is defendant's burden to provide an adequate record to support his claim. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  We granted defendant's request for judicial notice of the entire appellate record filed in his 2004 appeal, *People v. Green*, *supra*, B168254.  However, defendant did not lodge any part of that record, and the only portion of the 2004 record to which

10

defendant has referred is the appellate decision.  Other than urging the belief that the trial court failed to properly follow the procedure under section 1170.95, a claim we have rejected, defendant cites no portion of the 2004 record that might show that the trial court misinterpreted the jury instructions or otherwise erred in finding defendant ineligible as a matter of law. We thus agree with respondent that defendant has not met his burdens.

Moreover, defendant has not shown prejudice from the asserted errors.  It is defendant's burden as appellant to show that any claimed error was prejudicial and to provide an adequate record.  (*Denham v. Superior Court, supra*, 2 Cal.3d at p. 564.)  Defendant counters that it is not his burden to show prejudice because he had the right to appointed counsel under the Fifth and Sixth Amendments to the federal constitution, and summary denial without the appointment of counsel violated his right to due process.

Contrary to defendant's reasoning, prisoners have no "constitutional right to counsel when mounting collateral attacks upon their convictions [citation]." (*Pennsylvania v. Finley* (1987) 481 U.S. 551, 555.)  Under the federal constitution, the right to appointed counsel extends only to trial and the first appeal; and when states enact statutes to provide other postconviction relief, they have substantial discretion to develop and implement such programs.  (*Id.* at pp. 557-559.)  In California, examples can be found in the rules governing petitions for writ of habeas corpus and *coram nobis* which require the petition to state a prima facie showing of entitlement to relief before the court appoints counsel. (*People v. Fryhaat* (2019) 35 Cal.App.5th 969, 982.)

Defendant also contends that his petition reached a "critical stage" of the criminal process, requiring the appointment of counsel, and that the trial court's failure to appoint counsel was "structural error" which relieved him of showing of prejudice. Defendant relies on a comparison to *People v. Rouse* (2016) 245 Cal.App.4th 292, 296-297, which held that resentencing under section 1170.18 (Prop. 47) is a critical stage of the criminal process requiring the appointment of counsel. *Rouse* does not help defendant, as its holding was limited to petitioners who had passed the initial eligibility stage and had been found eligible under the statute. (*Rouse*, at pp. 299-300.) The court compared the procedure to habeas corpus and *coram nobis*, where once "a postconviction petition by an incarcerated defendant 'attacking the validity of a judgment *states a prima facie case leading to issuance of an order to show cause*, the appointment of counsel is demanded by due process concerns.' [Citations.]" (*Id.* at p. 300, italics added, citing *In re Clark* (1993) 5 Cal.4th 750, 780 [habeas corpus], and *People v. Shipman* (1965) 62 Cal.2d 226, 232-233 [*coram nobis*].) Defendant did not get to that stage. He failed to make a prima facie showing that he came within the provisions of section 1170.95, which would have triggered a statutory right to counsel. (§ 1170.95, subd. (c); see *Cornelius, supra*, 44 Cal.App.5th at p. 58; *Verdugo, supra*, 44 Cal.App.5th at pp. 332-333; *Lewis, supra*, 43 Cal.App.5th at p. 1140.)

Defendant was thus not excused from his burden to demonstrate both error and prejudice, and as he has done neither, his claims do not warrant reversal.

## DISPOSITION

The order of the superior court denying defendant's section 1170.95 petition is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT